```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
ARTHUR COCKETT,

                    Petitioner,
                                            MEMORANDUM & ORDER
          -against-                         12-CV-5427 (JS)

ANTHONY ZON, Acting Superintendent
of Cape Vincent Correctional
Facility at Jefferson County,

                    Respondent.
----------------------------------X
APPEARANCES
For Petitioner:     Robert D. DiDio, Esq.
                    Law Offices of Robert DiDio
                    80-02 Kew Gardens Road, 3rd Floor
                    New York, NY 11415

For Respondent:     Michael J. Miller, Esq.
                    Suffolk County District Attorney's Office
                    Criminal Courts Building
                    200 Center Drive
                    Riverhead, NY 11901
```

SEYBERT, District Judge:

Before the Court is petitioner Arthur Cockett's ("Cockett" or "Petitioner") Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, the Petition is DENIED.

BACKGROUND

In 2006, Cockett participated in two fraudulent mortgage transactions secured by property in Suffolk County. (Resp't's Ans., Docket Entry 8, ¶¶ 3-4.) One property was 26 Hamlin Street in West Babylon, with a closing date of

August 9, 2006, and the other property was 119 McKinley Drive in Mastic Beach, with a closing date of October 6, 2006. (Resp't's Ans. ¶ 4.) Cockett, from his office located in New York County, and in his capacity as an office manager of a Florida-based mortgage brokerage firm, as well as Walter Crawford ("Crawford"), a New York City based accountant, provided lenders with false information in order to obtain a mortgage on the properties. (Pet., Docket Entry 1, at 7.) When the loans were funded proceeds were routed through Cockett and Crawford rather than the proper recipients of the funds. (Resp't's Ans. ¶ 5.) In both transactions a straw buyer--Donna Reid ("Reid")-- asserted that she was buying the house as her primary residence, and was paid a total of $25,000.00 for her role, which included participation in a third fraudulent mortgage deal. (Resp't's Ans. ¶ 5.) For each transaction, Jordan Kapchan, Esq. ("Kapchan"), was used by Cockett to act as the closing agent for the lender. (Resp't's Ans. ¶ 5.)

Cockett and Crawford were charged with two counts of Grand Larceny in the Third Degree (under New York Penal Law ("N.Y.P.L.") § 155.35); one count of Scheme to Defraud in the First Degree (N.Y.P.L. § 190.65); two counts of Criminal Possession of a Forged Instrument in the Second Degree (N.Y.P.L. § 170.25); and ten counts of Falsifying Business Records in the First Degree (N.Y.P.L. § 175.10). (Resp't's Ans. ¶ 3.)

On March 6, 2009, Cockett was arrested and subsequently released after posting bail (Pet. at 12), and on April 8, 2009, he was arraigned on the indictment. (Pet. at 12.)

On May 5, 2010, a Molineux/Ventimiglia hearing was held to determine if the prosecution would be allowed to introduce evidence at trial that Cockett engineered a third fraudulent mortgage for 153 Putnam Avenue, Freeport in Nassau County on or about or between October 6, 2006 and November 6, 2006. (Hearing Transcript ("Hr'g Tr."), Docket Entry 8-9, at 6:17-23; Resp't's Ans. ¶ 6.) The prosecutor provided documents and the proposed testimony of Crawford, Reid, and Kapchan to the hearing court, in an effort to establish Cockett's involvement with the third fraudulent transaction. (Hr'g Tr. 12:22-15:6.) Cockett objected to the use of the documentary evidence as well as the entire Molineux/Ventimiglia motion. (Hr'g Tr. 16:16-24:18.) He argued that if Crawford, Reid, and Kapchan were believed, then there was no need for testimony about an additional mortgage. (Hr'g Tr. 41:2-23.) Cockett further asserted that if allowed at all, the proposed Molineux evidence should be reserved for rebuttal. (Hr'g Tr. 42:19-44:18.) The hearing court concluded that both the documentary and testimonial evidence would be admissible at trial:

> The Court finds that testimonial and documentary evidence, for the alleged uncharged fraudulent real estate transaction which involved the defendant and occurred on or about November 6, 2006, for premises located at 153 Putnam Avenue, Freeport, New York, are probative regarding 'similar acts done under similar circumstances at about the same time with intent to defraud by the same means, and that the common method, purpose and victim formed the connecting links which strung together the . . . [alleged] successive and successful efforts to defraud pursuant to a common scheme; and that the evidence [is] competent to show knowledge, intent and absence of mistake" (see People v Rutman, 260 AD 784, 24 NYS2d 334 [2nd Dept 1940]).  The Court further finds the evidence which relates to the identity of defendant is clear and convincing and the evidence provides a background to the pending charges.  The Court would note that while the November 6, 2006 events are subsequent to the events in the indictment (see People v Ingram, supra), the contract for sale of the Freeport property was executed August 1, 2006.  The Court has balanced the probative value and the need for the requested evidence against the potential for delay, surprise and prejudice to defendant, and finds the similarities of method, scheme, time, means, participants, knowledge, intent, and alleged fraudulent success, preclude any potential for delay, surprise and prejudice to defendant (see People v. Alvino, supra), as well as any difficulty defendant might have in rebutting the inference the uncharged fraudulent charge might bring into play (see People v. Robinson, supra).

(May 26, 2010 Decision and Order ("Order"), Docket Entry 8-2, at 3.)

On August 20, 2010, at the conclusion of a jury trial in New York Supreme Court, Suffolk County, Cockett was found guilty of twelve of the fifteen counts charged in the indictment. (Pet. at 32.) Cockett was convicted of both counts of Third Degree Grand Larceny, a Scheme to Defraud in the First Degree, one count of Second Degree Criminal Possession of a Forged Instrument, and eight counts of Falsifying Business Records in the First Degree. (Pet. at 32.) On November 19, 2010, after the jury returned its verdict, but before sentencing, Cockett moved to set aside the verdict pursuant to Criminal Procedure Law ("CPL") § 330.30. (Pet. ¶ 4.) Cockett argued that the verdict was against the weight of the evidence and that the geographical jurisdiction was not proper in Suffolk County. (Pet. ¶ 4.) The motion was denied. (Resp't's Ans. ¶ 13.) On December 3, 2010, Cockett was sentenced to serve twelve concurrent terms of incarceration, with the maximum term of 1 1/3 to 4 years imprisonment. (Resp't's Ans. ¶ 9.) On December 6, 2010, Cockett petitioned the Appellate Division, Second Judicial Department ("Appellate Divisions"), for a Writ of Prohibition pursuant to Article 78 of the New York Civil Practice Law and Rules. (Resp't's Ans. ¶ 14.) Cockett petitioned that the Appellate Division prohibit the trial court from taking any action with regard to this case because the trial court lacked jurisdiction. (Resp't's Ans. ¶ 14.) On

December 28, 2010, the application was denied. (Resp't's Ans. ¶ 15.)

Cockett appealed the judgment to the Appellate Division on July 5, 2011. (Pet. ¶ 10.) The appeal raised ten claims: (1) Cockett's alleged criminal conduct took place outside of Suffolk County and did not cause a particular effect in Suffolk County; (2) Cockett did not intentionally cause harm in Suffolk County; (3) the indictment against Cockett was defective and should be dismissed; (4) the records which Cockett was convicted of falsifying are not business records as contemplated under Penal Law §§ 175.00 and 175.10; (5) the documents used to secure the falsifying business records convictions were not maintained for the purpose of evidencing or reflecting the condition or activity of an enterprise; (6) the evidence was insufficient to prove the crime of grand larceny in the third degree; (7) the rule concerning uncharged evidence as set forth by People v. Molineux was violated; (8) the People did not prove Cockett's guilt beyond a reasonable doubt; (9) the verdicts were against the weight of the evidence; and (10) Cockett's sentence should be reduced in the interest of justice. (Pet. ¶ 10; see also Appellant's Br., Docket Entry 1-1, Ex. D, at 10-11.)

On May 23, 2012, The Appellate Division affirmed the judgment of conviction in its entirety. (People v. Cockett, 95

6

A.D.3d 1230, 945 N.Y.S.2d 172 (2d Dep't 2012).) The Appellate Division specifically held that geographical jurisdiction was properly pled with adequate notice to the petitioner, and that it was proven at trial. (Cockett, 95 A.D.3d at 1231, 945 N.Y.S.2d at 173.) The Appellate Division further held that the uncharged crimes evidence was properly admitted into evidence at trial because it was probative as to Cockett's knowledge and intent with respect to the charged crimes. (Cockett, 95 A.D.3d at 1231, 945 N.Y.S.2d at 173-74.)

Following the Appellate Division's affirmance, Cockett sought leave to appeal to the New York Court of Appeals on May 28, 2012. (Pet. ¶ 12.) On June 29, 2012, the Court of Appeals denied Cockett's leave to appeal. (People v. Cockett, 19 N.Y.3d 958, 973 N.E.2d 208, 950 N.Y.S.2d 110 (N.Y. 2012).) Cockett's subsequent motion for reconsideration and reargument of his leave application was also denied. (People v. Cockett, 19 N.Y.3d 972, 973 N.E.2d 764, 950 N.Y.S.2d 354 (N.Y. 2012).)

Ultimately, on November 2, 2012, Cockett filed this application for writ of habeas corpus. He seeks a writ on the grounds that: (1) the state court permitted the prosecution to present evidence of an uncharged crime on their direct case, thereby impairing Cockett's right and ability to defend himself and receive a fair trial, and (2) the state court compelled Cockett to stand trial before a jury not compromised of his

7

peers, where proper jurisdiction over him was lacking and the indictment failed to fairly apprise him of the nature of the charged filed against him. (Pet. ¶ 18.)

DISCUSSION

The Court will first address the applicable legal standard before turning to the merits of the petition.

I. Legal Standard

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 780, 178 L. Ed. 2d 624 (2011).

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application of habeas corpus [on] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

Antiterrorism and Effective Death Penalty Act of 1196 ("AEDPA"), 28 U.S.C. § 2254(a).

A federal court may grant a writ of habeas corpus to a state prisoner when prior state adjudication of the prisoner's case "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Id. at § 2254(d)(1). "This is a 'difficult to meet,' and a 'highly

8

deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" Cullen v. Pinholster, --- U.S. ----. 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557 (2011) (citations omitted).

During a review of a petition for a writ of habeas corpus, federal courts presume that the state court's factual determinations are correct. See 28 U.S.C. § 2254(e)(1).

A.  Exhaustion

A state prisoner seeking federal habeas review of his state conviction is required to first exhaust all remedies available to him in state court. See 28 U.S.C. § 2254(b)(1)(A). "Exhaustion requires a petitioner fairly present the federal claim in state court." Jones v. Keane, 329 F.3d 290, 294 (2d Cir. 2003). Presentation means a petitioner has "informed the State court of both the factual and the legal premises of the claim he asserts in Federal court." Id. at 295 (internal quotation marks and citations omitted).

B.  Procedural Default

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will

9

> result in a fundamental miscarriage of justice.

Coleman v. Thompson, 501 U.S. 722, 750, 11 S. Ct. 2546, 115 L. Ed. 2d 640 (1991).

"If a habeas applicant fails to exhaust state remedies by failing to adequately present his federal claim to the state courts so that the state courts would deem the claim procedurally barred, we 'must deem the claim procedurally defaulted.'" Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011) (quoting Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2011)).

## II. Ground One: Molineux/Ventimiglia Hearing

Cockett argues that, during the pre-trial Molineux/Ventimiglia hearing, the trial court improperly permitted evidence of an uncharged crime into the hearing and, subsequently, into evidence during the trial. Cockett further asserts that the probative value of this evidence was outweighed by his constitutional right to a fair trial. The Appellate Division held that the trial court properly weighed the probative value of the evidence and properly admitted the evidence. See Cockett, 95 A.D.3d at 1231, 945 N.Y.S.2d at 173-74.

### A. Standard

> [E]vidence of a crime, wrong, or other act . . . may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity,

absence of mistake, or lack of accident. On request by a defendant in a criminal case, the prosecutor must:

(A) provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and

(B) do so before trial[.]

FED. R. EVID. 404(b)(2).

"The Second Circuit evaluates Rule 404(b) evidence under an 'inclusionary approach' and allows evidence 'for any purpose other than to show a defendant's criminal propensity.'" United States v. Garcia, 291 F.3d 127, 136 (2d Cir. 2002) (quoting United States v. Pitre, 960 F.2d 1112, 1118 (2d Cir. 1992); United States v. Tubol, 191 F.3d 88, 95 (2d Cir. 1999)).

To determine if the Court properly admitted prior act evidence pursuant to Rule 404(b), we consider whether: (1) the prior act evidence was offered for a proper purpose; (2) the evidence was relevant to a disputed issue; (3) the probative value of the prior act evidence substantially outweighed the danger of its unfair prejudice; and (4) the court administered an appropriate limiting instruction.

Id. (internal quotation marks and citations omitted).

In New York, the rule against admission of prior bad acts "is not an absolute[.]" People v. Ventimiglia, 52 N.Y.2d 350, 359, 420 N.E.2d 59, 438 N.Y.S.2d 261 (N.Y. 1981).

Its policy of protection against potential prejudice gives way when evidence of prior

> crime is probative of the crime now charged. There is no litmus paper test for determining when the probative value of the evidence outweighs its potential for prejudice. Attempts to categorize situations in which evidence of prior crime is admissible have yielded Molineux' well-known listing of (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; (5) the identity of the person charged with the commission of the crime on trial, but even that listing is acknowledged to be merely illustrative and not exhaustive or capable of statement with categorical precision.

Id. (internal quotations marks and citations omitted).

B. Analysis

Cockett's claims fail substantively. Cockett fails to establish how the Appellate Division's holding on this issue "was contrary to, or involved an unreasonable application of, clearly established Federal law[.]" 28 U.S.C. § 2254(d)(1). New York precedent on this topic matches Federal statutory law and Second Circuit's interpretation of that law. The trial court made a reasonable determination that the probative value of Cockett's uncharged crime outweighed any prejudicial effect against Cockett at trial.

The Court concurs with the Appellate Division holding that "[t]he evidence of uncharged crimes was probative on the issue of defendant's knowledge and intent with respect to the

12

charged crimes. . . . Moreover, inasmuch as the probative value of this evidence outweighed any potential for undue prejudice, the County Court did not improvidently exercise its discretion in admitting this evidence." Cockett, 95 A.D.3d at 1231, 945 N.Y.S.2d at 173-74. The evidence met the Garcia test of proper admission: (1) the trial court reasonably assumed the evidence was offered for a proper purpose; (2) the evidence was relevant to the case; and (3) the probative value of the uncharged crime evidence outweighed the danger of its unfair prejudice. Garcia, 291 F.3d at 136. As to the fourth Garcia prong, the trial court properly "administered an appropriate limiting instruction."[1] Id.

Further, this claim concerns a state evidentiary ruling, which rulings generally do not implicate constitutional rights and, therefore, fails to merit habeas review. See, e.g., Crane v. Kentucky, 476 U.S. 683, 689-90, 106 S. Ct. 2142, 2146, 90 L. Ed. 2d 636 (1986). "In order to prevail on a claim that an evidentiary error deprived the defendant of due process under

---

[1] "There is evidence in this case that on other occasion the defendant engaged in criminal conduct; specifically, this is in reference to the alleged Freeport transaction. That evidence was not offered and must not be considered for the purpose of proving that the defendant had a propensity or predisposition to commit any of the crimes charged in this case. It was offered as evidence for your consideration on the questions of identity, intent, knowledge or absence of mistake. If you find the evidence believable, you may consider it only for that limited purpose and for none other." (Trial Transcript ("Tr. T."), Docket Entry 8-24, 1811:18-1812:10.)

the Fourteenth Amendment he must show that the error was so pervasive as to have denied him a fundamentally fair trial[.]" Collins v. Scully, 755 F.2d 16, 18 (2d Cir 1985) (citing United States v. Agurs, 427 U.S. 97, 108, 96 S. Ct. 2392, 2399, 49 L. Ed. 2d 342 (1976)). As the Court finds that there was no error as to the evidentiary ruling, Cockett's claim does not rise to a constitutional level and is, therefore, DENIED.

II. Ground Two: Jurisdiction

Cockett asserts that the charges against him were improperly tried in Suffolk County, New York. (See Pet. ¶ 18.) He maintains that venue was improper in Suffolk County because the indictment failed to fairly apprise him of the nature of the charges filed against him, (Pet. ¶ 18), and that the evidence was insufficient at trial to establish his conduct had a "particular effect" on Suffolk County. (See Pet. at 48-49.) This claim is easily dismissed:

> [T]he jurisdictional argument must be rejected because it fails to raise an issue of federal law, which is an essential prerequisite to habeas relief. Although New York has chosen to style § 20.40 of its Criminal Procedure Law in terms of "jurisdiction," the statute is in fact concerned with venue. The State of New York clearly has jurisdiction over the offenses charged. A violation of its laws allocating that jurisdiction among its various counties does not create a federal constitutional issue. As we stated in United States v. Mancusi, 415 F.2d 205, 209 (2d Cir. 1969), "no federal court to our knowledge has ever

14

> granted a writ where a state court's asserted lack of jurisdiction resulted solely from the provisions of state law." In <u>Wills v. Egeler</u>, 532 F.2d 1058, 1089 (6th Cir. 1976), the court dismissed the argument [Petitioner] makes as "frivolous and completely without merit." That assessment applies here as well.

<u>United States ex rel. Roche v. Scully</u>, 739 F.2d 739, 741-42 (2d Cir. 1984). The Second Circuit's reasoning is also applicable here. Cockett was charged and found guilty under New York State criminal law. Cockett's case was heard by a New York State judge. Whether that case was held in New York County or Suffolk County does not concern Cockett's constitutional rights. Accordingly, Cockett's claim is DENIED.

<u>CONCLUSION</u>

For the foregoing reasons, Cockett's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED. Because there can be no debate among reasonable jurists that Cockett was entitled to habeas relief, the Court does not issue a Certificate of Appealability. 28 U.S.C. § 2253(c); <u>see also</u> <u>Middleton v. Att'ys Gen.</u>, 396 F.3d 207, 209 (2d Cir. 2005).

The Clerk of the Court is directed to mark this matter CLOSED.

SO ORDERED.

Dated: February  2 , 2015        /s/ JOANNA SEYBERT  
      Central Islip, New York        Joanna Seybert, U.S.D.J.